# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAVID L. MATHIS, ) | |
| ) | Civil Action No. 11 - 450 |
| Plaintiff, ) | |
| ) | District Judge Nora Barry Fischer |
| v. ) | Chief Magistrate Judge Lisa Pupo Lenihan |
| ) | |
| JENNIFER MANZA, et al ) | |
| Defendants. ) | ECF No. 18 |
| ) | |

## REPORT AND RECOMMENDATION

### I. RECOMMENDATION

For the reasons that follow, it is respectfully recommended that Defendants' Partial Motion to Dismiss (ECF No. 18) be granted and that Plaintiff's equal protection and establishment clause claims concerning the providing of religious texts and visits from religious advisers be dismissed with prejudice.

### II. REPORT

On April 8, 2011, Plaintiff, David L. Mathis, commenced this action under 42 U.S.C. § 1983 (ECF No. 3) alleging violations of his constitutional rights stemming from his incarceration at the Beaver County Jail. Plaintiff filed an Amended Complaint (ECF No. 17) on August 4, 2011, naming as Defendants: Jennifer Monza (incorrectly identified as Jennifer Manza), Carol Steele-Smith, William Schouppe, and the County of Beaver.

On August 18, 2011, Defendants filed a Partial Motion to Dismiss (ECF No. 18) Plaintiff's Amended Complaint and a brief in support of the Motion (ECF No. 19). Plaintiff filed

1

a Response (ECF No. 21) to Defendants' Motion, Defendants filed a Reply (ECF No. 22) to the Response, and Plaintiff filed a Sur Response (ECF No. 23) to the Reply.

### A. Standard of Review

When considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), courts must accept all factual allegations in the complaint as true and read them in the light most favorable to the plaintiff. Angelastro v. Prudential-Bache Securities, Inc., 764 F.2d 939, 944 (3d Cir. 1985). A complaint must be dismissed pursuant to Rule 12(b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 556 (2007). "Factual allegations must be enough to raise a right to relief above a speculative level." Id. at 555. The court need not accept inferences drawn by the plaintiff if they are unsupported by the facts as set forth in the complaint. *See* California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) (citing Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997)). Nor must the court accept legal conclusions set forth as factual allegations. Bell Atlantic Corp., 550 U.S. at 555 (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)). Additionally, a civil rights claim "must contain specific allegations of fact which indicate a deprivation of constitutional rights; allegations which are nothing more than broad, simple and conclusory statements are insufficient to state a claim under § 1983." Alfaro Motors, Inc. v. Ward, 814 F.2d 883, 887 (2d Cir. 1987).

Courts generally consider the allegations of the complaint, attached exhibits, and matters of public record in deciding motions to dismiss. Pension Benefit Guar. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993). Factual allegations within documents described or identified in the complaint also may be considered if the plaintiff's claims are based upon those documents. Id. (citations omitted). Moreover, a district court may consider indisputably

authentic documents without converting a motion to dismiss into a motion for summary judgment. Spruill v. Gills, 372 F.3d 218, 223 (3d Cir. 2004); In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

Finally, a court must employ less stringent standards when considering *pro se* pleadings than when judging the work product of an attorney. Haines v. Kerner, 404 U.S. 519, 520 (1972). When presented with a *pro se* complaint, the court should construe the complaint liberally and draw fair inferences from what is not alleged as well as from what is alleged. Dluhos v. Strasberg, 321 F.3d 365, 369 (3d Cir. 2003). In a section 1983 action, the court must "apply the applicable law, irrespective of whether the *pro se* litigant has mentioned it by name." Higgins v. Beyer, 293 F.3d 683, 688 (3d Cir. 2002) (quoting Holley v. Dep't of Veteran Affairs, 165 F.3d 244, 247-48 (3d Cir. 1999)). *See also* Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996) ("Since this is a § 1983 action, the [pro se] plaintiffs are entitled to relief if their complaint sufficiently alleges deprivation of any right secured by the Constitution.") (quoting Higgins, 293 F.3d at 688). Notwithstanding this liberality, *pro se* litigants are not relieved of their obligation to allege sufficient facts to support a cognizable legal claim. *See*, *e.g.*, Taylor v. Books A Million, Inc., 296 F.3d 376, 378 (5th Cir. 2002); Riddle v. Mondragon, 83 F.3d 1197, 2102 (10th Cir. 1996).

### B. Plaintiff's Allegations

In his Amended Complaint Plaintiff alleges that he was transferred to the Beaver County Jail by the U.S. Marshals Service on February 11, 2011. (ECF No. 17 at 2.) During his intake, Plaintiff allegedly stated that he had no religious affiliation or preference. (ECF No. 17 at 2.) Plaintiff was placed on administrative custody and subsequently transferred to the Restricted Housing Unit ("RHU") of the jail on February 14, 2011. (ECF No. 17 at 2.) The following day,

3

Plaintiff received a Beaver County Jail Inmate Handbook from Defendant Jennifer Monza. (ECF No. 17 at 2.)

On February 16, 2011, Plaintiff requested to be re-assigned to another unit within the jail. (ECF No. 17 at 2.) He received a response from Defendant Carol Steele-Smith on February 18, 2011, denying his request and informing him that he was in the RHU because he was classified as an escape risk. (ECF No. 17 at 2.) Plaintiff appealed the decision to Defendant William Schouppe on February 21, 2011. (ECF No. 17 at 2.) In his appeal, Plaintiff sought either reassignment or benefits similar to those granted to female RHU inmates, such as law library and leisure library cart access, full commissary privileges, and hot meals. (ECF No. 17 at 2.)

On February 23, 2011, Plaintiff was informed by a staff member that only religious materials were allowed in the RHU. (ECF No. 17 at 2.) In order to verify this information, Plaintiff requested a Bible from the Chaplain, and the following day he received a Bible, Scripture Text Datebook, "In Touch" magazine, and a "Beside the Still Water" devotional booklet. (ECF No. 17 at 2.) On February 28, 2011, Plaintiff requested a list of allowable property in the RHU, and he received a list which stated, among other things, that RHU inmates were allowed only one book of a "religious nature" and that any items found in an inmate's possession or cell other than what was listed would be considered contraband and confiscated. (ECF No. 17 at 2.) Plaintiff alleges that his "Writer's Digest" magazine was confiscated during a subsequent cell search. (ECF No. 17 at 2.)

On March 3, 2011, Plaintiff filed a grievance seeking the same benefits enjoyed by female RHU inmates and other pretrial, administrative custody inmates housed in other units of the jail, such as law library and leisure library cart access, books and other reading materials, full

commissary privileges and hot meals. (ECF No. 17 at 3.) Defendant Jennifer Monza denied his request. (ECF No. 17 at 3.)

Plaintiff refiled the March 3, 2011, grievance with Defendant Carole Steele-Smith on March 4, 2011. (ECF No. 17 at 3.) When he did not receive a response to his grievance, he sent in a request to Defendant Carol Steele-Smith on March 14, 2011, regarding its status. (ECF No. 17 at 3.) That same day, Defendant Carol Steele-Smith replied to the request form granting Plaintiff access to the law library and denying all other benefits. (ECF No. 17 at 3.)

On March 15, 2011, Plaintiff sent to Defendant William Schouppe: a copy of his grievance from March 3, 2011, a copy of Defendant Carol Steele-Smith's reply to the grievance, an additional statement of issues, and a proposed remedy. (ECF No. 17 at 3.) After receiving no response, he sent Defendant William Schouppe a request seeking the status of his grievance but again received no response. (ECF No. 17 at 3.)

On March 20, 2011, Plaintiff had conversations with a fellow inmate who had previously escaped from Beaver County Jail. (ECF No. 17 at 3.) According to Plaintiff, the inmate was placed in the RHU for reasons unrelated to the escape and was later returned to general population. (ECF No. 17 at 3.)

On April 15, 2011, Plaintiff sent a request to Defendant Carol Steele-Smith regarding sleep deprivation, mental cruelty and exhaustion he was experiencing in the RHU. (ECF No. 17 at 4.) Plaintiff sought transfer to the Special Needs Unit with the caveat that he be placed on lock down for 23 hours per day as was the practice of the jail for other administrative custody and disciplinary segregation inmates. (ECF No. 17 at 4.) Plaintiff's request was denied. (ECF No. 17 at 4.)

Plaintiff was removed from the Beaver County Jail on April 22, 2011. (ECF No. 17 at 4.)

## C. Plaintiff's Claims

Plaintiff asserts six claims for relief in his Amended Complaint. First, Plaintiff alleges that, through practices, procedures, and policies, Defendants Beaver County Jail and William Schouppe, "knowingly, willfully, and deliberately" trained jail staff to deprive him of his Fourteenth Amendment rights to due process and equal protection and his First Amendment rights to freedom of speech and press by denying him and other non-religious RHU inmates access to non-religious reading materials and extra jail visits while allowing religious RHU inmates religious reading materials and visits with spiritual advisors (counts one, two, and three). Plaintiff also asserts that Defendants actions violated the First Amendment's Establishment Clause. (ECF No. 17 at 4-6.)

With respect to Defendants Carol Steele-Smith and Jennifer Monza, Plaintiff alleges Defendants "knowingly, willfully, and deliberately" deprived him of his Fourteenth Amendment rights to due process and equal protection and First Amendment right to freedom of speech and press by denying male RHU inmates like himself hot meals, full commissary privileges, leisure library cart access, and non-religious reading materials while allowing female RHU inmates and other pretrial and administrative custody inmates housed outside the RHU these same benefits (counts four and five). (ECF No. 17 at 6-7.)

Finally, Plaintiff alleges that Defendants Carol Steele-Smith and Jennifer Monza, "knowingly, willfully, and deliberately" deprived Plaintiff of his Fourteenth Amendment right to due process and equal protection when they placed him in the RHU on administrative custody status as an escape risk while simultaneously placing a known, convicted escapee in general population (count six). (ECF No. 17 at 7.)

## D. Defendants' Motions to Dismiss

Defendants move to dismiss, in part, Plaintiff's Amended Complaint insofar as it attempts to establish an equal protection claim and First Amendment establishment clause claim concerning alleged disparate treatment and promotion of religion at the Beaver County Jail.

1. **Equal Protection**

The Equal Protection Clause of the Fourteenth Amendment exists to protect similarly situated individuals from disparate treatment under the law or by some other state action. Artway v. Att'y Gen. of New Jersey, 81 F.3d 1235, 1267 (3d Cir. 1996). The Equal Protection Clause "is not a command that all persons be treated alike but, rather, 'a direction that all persons similarly situated should be treated alike.'" Id. (quoting City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 439 (1985)). "Treatment of dissimilarly situated persons in a dissimilar manner by the government does not violate the Equal Protection Clause." Klinger v. Dep't of Corrs., 31 F.3d 727, 731 (8th Cir. 1994).

An equal protection violation in a prison setting requires proof that an inmate "was treated differently than others similarly situated as a result of intentional or purposeful discrimination . . . [The inmate] also must show that the disparity in treatment cannot survive the appropriate level of scrutiny, which, in a prison setting, means that he must demonstrate that his treatment was not reasonably related to [any] legitimate penological interests." Phillips v. Girdich, 408 F.3d 124, 129 (2d Cir. 2005) (internal citation and quotation marks omitted); *see also* Wilson v. Schillinger, 761 F.2d 921, 929 (3d Cir. 1985).

Plaintiff alleges that he and other non-religious inmates within the RHU at Beaver County Jail were subject to disparate treatment because they were not allowed access to non-religious texts and extra jail visits while religious inmates were allowed access to religious texts and jail

7

visits from religious advisers.[1] In this case, Plaintiff's allegations are not sufficient to state an equal protection violation because he has failed to allege facts which would support a finding of disparate treatment. Plaintiff has not shown that inmates who hold religious beliefs are treated differently than those who do not. Plaintiff acknowledges that, pursuant to jail policy, all inmates housed within the RHU are allowed to have a religious text of their choice and all inmates are allowed a visit from a religious adviser. No inmate housed within the RHU is allowed to possess non-religious texts. In other words, all RHU inmates are treated the same without regard to their religious beliefs. Because Plaintiff has failed to meet this threshold requirement to satisfy an equal protection violation, his claim must be dismissed. Furthermore, as it is clear that leave to amend with respect to this claim would be futile, dismissal should be with prejudice.[2]

## 2. First Amendment's Establishment Clause

The First Amendment's Establishment Clause prevents the government from promoting any religious doctrine or organization or affiliating itself with one. County of Allegheny v. American Civil Liberties Union, 492 U.S. 573, 590 (1989). The clause is violated when "the challenged governmental practice has the purpose or effect of 'endorsing' religion." Id. at 592 (citations

---

[1] Plaintiff also sets forth two other equal protection claims in his Amended Complaint. First, Plaintiff alleges that he and the other male RHU inmates were treated differently than the female RHU inmates and other non-RHU administrative custody inmates because they were denied access to hot meals, full commissary privileges, leisure library cart access, and non-religious reading materials. Plaintiff also alleges that he was treated differently than other escape risk inmates at the Beaver County Jail because he was placed in the RHU while other known convicted escapee inmates were placed within general population. The Court notes that Defendants do not address these allegations within their Partial Motion to Dismiss, and as such, the Court will not consider these claims at this time.

[2] The Court is mindful of the fact that *pro se* pleadings are to be construed liberally, Haines v. Kerner, 404 U.S. 519, 520 (1972), and *pro se* litigants are to be granted leave to file a curative complaint even when they do not seek leave to do so, "unless an amendment would be inequitable or futile." Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004). However, a complaint that sets forth facts which affirmatively demonstrate that the plaintiff has no right to recover is properly dismissed without leave to amend. Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d Cir. 2002).

omitted). However, it is not violated when a governmental entity provides opportunities for institutionalized inmates to practice their religion, provided that the entity does so in an even handed way. Harris v. Skolnik, No. 2:10-cv-00365-RLH-GWF, 2011 U.S. Dist. LEXIS 97695, at *6-7 (D. NV Aug. 29, 2011).

To avoid violating the Establishment Clause, a government regulation must meet three requirements: "First, the statue must have a secular legislative purpose; second, its principal or primary effect must be one that neither advances nor inhibits religion; finally, the statute must not foster 'an excessive government entanglement with religion.'" Lemon v. Kurtzman, 403 U.S. 602, 612-13 (1971); *see also* Modrovich v. Allegheny County, Pennsylvania, 385 F.3d 397, 401 (3d Cir. 2004) (discussing the Lemon test). When considering regulations in the prison context, the regulations must be "reasonably related to legitimate penological interests." Turner v. Safley, 482 U.S. 78, 89 (1987).

Prisons deal with "a unique area of tension between the establishment clause and the free exercise clause of the First Amendment." United States v. Kahane, 396 F. Supp. 687, 698 (2d Cir. 1975). Government cannot require persons to worship in particular ways and cannot aid, endorse, or promote particular religions. "But where the government has total control over people's lives, as in prisons, a niche has necessarily been carved into the establishment clause to require the government to afford opportunities for worship." Kahane, 396 F. Supp. at 687. Indeed, the Supreme Court has noted that, although provisions in penal institutions might contravene the Establishment Clause, they would be sustained as necessary to secure the right to worship guaranteed by the Free Exercise Clause. Dist. of Abington Township v. Schempp, 374 U.S. 203, 296-98 (1963) (Brennan, J., concurring). Thus, in the prison context, "the

establishment clause has been interpreted in the light of the affirmative demands of the free exercise clause." Kahane, 396 F. Supp. at 698.

Plaintiff asserts Defendants' practice of allowing religious inmates the right to retain religious texts while denying non-religious inmates non-religious texts impermissibly conveys a message of endorsement of religion. Essentially, the crux of Plaintiff's claim is that Defendants' conduct violates the Establishment Clause by accommodating religious inmates' religious beliefs. The Court, however, disagrees.

Beaver County Jail's policy of allowing inmates to have religious materials and visits from religious advisers does not violate the test set forth by the Supreme Court in Lemon. The policy serves a secular purpose in that it complies with the legal requirements of the First Amendment; it neither advances nor inhibits religion since it gives inmates the option, but not the obligation to follow their faith; and it does not excessively entangle the government with religion but simply permits inmates to freely exercise their religious beliefs. Therefore, Plaintiff's claim that Defendants' violated the Establishment Clause of the First Amendment is dismissed with prejudice as amendment would be futile.[3]

## III. CONCLUSION

For the reasons set forth above, it is respectfully recommended that Defendants' Partial Motion to Dismiss (ECF No. 18) be granted and that Plaintiff's equal protection and establishment clause claims concerning the providing of religious texts and visits from religious advisers be dismissed with prejudice.

---

[3] To the extent Plaintiff asserts a freedom of speech or freedom of press violation, the Court notes that the merits of those claims will not be addressed at this time since they were not raised in Defendants' Partial Motion to Dismiss.

In accordance with the applicable provisions of the Magistrate Judges Act [28 U.S.C. § 636(b)(1)(B)&(C)] and Rule 72.D.2 of the Local Rules of Court, the parties shall have fourteen (14) days from the date of the service of this report and recommendation to file written objections thereto. Any party opposing such objections shall have fourteen (14) days from the date on which the objections are served to file its response. A party's failure to file timely objections will constitute a waiver of that party's appellate rights.

Dated: January 18, 2012

Lisa Pupo Lenihan
Chief United States Magistrate Judge

cc: David L. Mathis
05233-068
USP Atwater
P.O. Box 019001
Atwater, CA 95301

Counsel of record.