**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DAVID L. MATHIS, | ) | |
| | ) | Civil Action No. 11 - 450 |
| Plaintiff, | ) | |
| | ) | District Judge Nora Barry Fischer |
| v. | ) | Chief Magistrate Judge Lisa Pupo Lenihan |
| | ) | |
| JENNIFER MONZA, CAROL | ) | |
| STEELE-SMITH, WILLIAM | ) | ECF Nos. 38, 40 |
| SCHOUPPE, AND COUNTY OF | ) | |
| BEAVER, | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

### I.     RECOMMENDATION

For the reasons that follow, it is respectfully recommended that Plaintiff's Motion for Partial Summary Judgment (ECF No. 38) be denied and Defendants' Motion for Summary Judgment (ECF No. 40) be granted.

### II.     REPORT

David L. Mathis ("Plaintiff") commenced this action pursuant to 42 U.S.C. § 1983.  In his Amended Complaint (ECF No. 17) he alleges violations of his constitutional rights stemming from his incarceration in the Beaver County Jail.  Defendants filed a Partial Motion to Dismiss, which was granted on February 10, 2012.  As a result, Counts One through Three of Plaintiff's Amended Complaint, naming Defendants Beaver County and William Schouppe (Warden of the Beaver County Jail), were dismissed with prejudice.  Defendants now move for summary

judgment on the remainder of Plaintiff's claims.  (ECF No. 40.)  Plaintiff has also filed a Partial

Motion for Summary Judgment.  (ECF No. 38.)  The motions are ripe for review.

## A.  Standard of Review

Summary judgment is appropriate if, drawing all inferences in favor of the non-moving

party, the record indicates that "there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Summary judgment

may be granted against a party who fails to adduce facts sufficient to establish the existence of

any element to that party's case and for which that party will bear the burden of proof at trial.

Celotex Corp. v. Catrett, 477 U.S. 317 (1986).  The moving party bears the initial burden of

identifying evidence or the lack thereof that demonstrates the absence of a genuine issue of

material fact.  National State Bank v. Federal Reserve Bank of New York, 979 F.2d 1579, 1582

(3d Cir. 1992).  Once that burden has been met, the non-moving party must set forth "specific

facts showing that there is a genuine issue for trial" or the factual record will be taken as

presented by the moving party and judgment will be entered as a matter of law.  Matsushita Elec.

Ind. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  An issue is genuine only if the

evidence is such that a reasonable jury could return a verdict for the non-moving party.

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).  The inquiry, then, involves determining

"whether the evidence presents a sufficient disagreement to require submission to a jury or

whether it is so one-sided that one party must prevail as a matter of law."  Brown v. Grabowski,

922 F.2d 1097, 1111 (3d Cir. 1990) (quoting Anderson, 477 U.S. at 251-52).  If a court, having

reviewed the evidence with this standard in mind, concludes that "the evidence is merely

colorable . . . or is not significantly probative," then summary judgment may be granted.

Anderson, 477 U.S. at 249-50.  Finally, while any evidence used to support a motion for

summary judgment must be admissible, it is not necessary for it to be in admissible form. *See* Fed. R. Civ. P. 56(c); Celotex, 477 U.S. at 324; J.F. Feeser, Inc., v. Serv-A-Portion, Inc., 909 F.2d 1524, 1542 (3d Cir. 1990).

### B. Factual Background

Plaintiff was arrested by the Federal Bureau of Investigation on January 9, 2010. (ECF No. 42-1,[1] Exh. A, Prisoner Custody Alert Notice.) He was held in the Allegheny County Jail until February 11, 2011, and, thereafter, transferred to the Beaver County Jail by federal authorities. (ECF No. 42-2, Exh. B, Affidavit of Warden Schouppe at ¶ 2.) On that day, the U.S. Marshals provided the Beaver County Jail officials with a written Prisoner Custody Alert Notice which described Plaintiff's current charges as escape and bank robbery and also indicated that he was to be kept separate from Lamont Laprade, his accomplice in the bank robbery/shooting for which he was being held. (ECF No. 42-1, Exh. A, Prisoner Custody Alert Notice; ECF No. 42-2, Exh. B, Affidavit of Warden Schouppe at ¶ 5-6.) The Prisoner Custody Alert Notice also advised that Plaintiff had a prior escape attempt. (ECF No. 42-1, Exh. A, Prisoner Custody Alert Notice.) Plaintiff admits that, prior to the incarceration in question, he was convicted of possession of escape paraphernalia while he was serving a sentence for bank robbery in federal prison. (ECF No. 3, Original Complaint at ¶ 2.)

Defendant Jennifer Monza is the Classification Coordinator at the Beaver County Jail. On February 15, 2011, she completed the classification notice for Plaintiff. (ECF No. 42-2, Exh. B, Affidavit of Warden Schouppe at ¶ 7; ECF No. 42-3, Exh. C, Classification Notice.) The classification notice identified Plaintiff as a federal inmate whom the federal officials designated an escape risk; therefore, Defendant Monza designated that Plaintiff be held in administrative

---
[1] The Appendix to Defendants' Concise Statement of Material Facts is docketed at ECF No. 42.

segregation. (ECF No. 42-3, Exh. C, Classification Notice.) She then prepared an Administrative Segregation Order that Plaintiff be held in administrative segregation and housed in the Restricted Housing Unit ("RHU"), the most secure housing area in the Beaver County Jail. (ECF No. 42-2, Exh. B, Affidavit of Warden Schouppe at ¶ 19; ECF No. 42-4, Exh. D, Administrative Segregation Order dated 2/15/11.) The Administrative Segregation Order stated that "as per the paperwork given to the jail from the U.S. Marshals, [Plaintiff] is an escape risk. He is to be housed in RHU under administrative segregation" until further notice. (ECF No. 42-4, Exh. 4, Administrative Segregation Order dated 2/15/11.) As such, Plaintiff was held in the RHU as an escape risk because it was the most secure area of the jail. (ECF No. 42-2, Exh. B, Affidavit or Warden Schouppe at ¶¶ 9-10.)

On February 16, 2011, Plaintiff filed a request slip stating "since coming to this facility on 2/11/11 I have been confined to SHU. I can only believe that this is a result of an escape attempt that occurred in 1994." (ECF No. 42-5, Exh. E, Request Slip dated 2/16/11.) Defendant Steele-Smith responded to this request on February 18, 2011, notifying Plaintiff that he was in the RHU because his paperwork from the Marshals' office indicated that he was an escape risk. Id.

The Beaver County Jail is a modern facility with construction completed on November 18, 2000. (ECF No. 42-2, Exh. B, Affidavit of Warden Schouppe at ¶ 11.) It houses both male and female inmates but they are segregated from one another for safety and security purposes. Id. at ¶ 12-13. The male inmates outnumber the female inmates by a large margin. Id. at ¶ 14. The Beaver County Jail includes a Restricted Housing Unit ("RHU") and a Special Needs Unit ("SNU") for male inmates. Id. at ¶ 16. The male RHU and SNU are in different locations than the male general population units. Id. at ¶ 17-18. All female inmates are held in the same area

4

of the jail.  Female RHU and SNU cells are contained within but separated from the female general population unit.  Id. at ¶ 19.  The female unit is on a different side of the jail from the male RHU and SNU units.  Id. at ¶ 20.  The male RHU unit and the female RHU cells are utilized for disciplinary and/or security risks.  Id. at ¶ 21.  The male SNU unit and the female SNU cells are used for any special needs, as well as overcrowding from RHU.  Id. at ¶ 22.

One purpose of the RHU is to house inmates who have committed disciplinary infractions in the jail.  Id. at ¶ 23.  For disciplinary and security reasons, there are limits on the activities of inmates in the RHU including limits on what they may maintain in their cells and on the activities in which they can engage at the jail.  Id. at ¶ 24.  There are also some restrictions on inmates in the SNU, depending on why the inmate is housed there.  Id. at ¶ 25.

Neither male nor female RHU inmates are permitted to have leisure reading materials or access to the leisure library cart.  Id. at ¶¶ 27-28.  However, they are permitted to have a religious text upon request, to have access to legal materials, and to receive legal mail and personal correspondence, but not magazines, books or periodicals.  Id. at ¶¶ 29-32.  They both receive the same commissary privileges and neither are permitted to watch television.  Id. at ¶¶ 33-34.  The only difference between the privileges afforded to male and female RHU inmates is that female RHU inmates can receive hot meals.  Id. at ¶¶ 35-36.  Inmates in the male RHU receive bag meals typically consisting of two sandwiches, milk or juice, and a dessert.  Id. at ¶ 37.  The reason for this difference in meals is for safety and security purposes as well as orderly management of the units.  Id. at ¶ 38.  Inmates in the male RHU were previously provided with hot meals but created disturbances and other problems by using the trays and utensils that accompany hot meals as weapons and to fling feces.  Id. at ¶ 39.  For the safety of the guards and other inmates and security purposes, inmates in the male RHU were switched to a bag meal.  Id.

at ¶ 40.  Because female RHU inmates have not demonstrated misuses of their hot meals, this change did not take place in the female RHU unit.  Id. at ¶ 43.

On March 4, 2011, Plaintiff filed a grievance seeking "the same benefits enjoyed by other pretrial, administrative custody inmates housed in other units and female Restricted Housing Unit inmates, namely law library and leisure library cart access, books and other reading materials, full commissary privileges and hot meals."  (ECF No. 42-6, Exh. F, Grievance dated 3/4/11.)  That same day, Defendant Monza responded that Plaintiff was housed in the RHU because the jail was notified by the U.S. Marshals that he was an escape risk.  Id.

On March 14, 2011, Plaintiff filed a request slip to Defendant Steele-Smith stating that "On March 4, 2011 I sent your office a Grievance Form (#00288) in reference to my placement in RHU, and more specifically, my request for access to law and leisure library carts, full commissary and reading benefits and hot meals.  However, I have not received a response within five business days.  Can you please tell me the status of my appeal?"  (ECF No. 70-1, Exh. K, Inmate Request Slip dated 3/14/11.)  Defendant Steele-Smith responded, "The law library cart is available to RHU inmates.  However, the regular library cart is not.  Have you not received the law library cart this week[?]  I will make sure it is moved tonight."  Id.

On March 15, 2011, Defendant Steele-Smith prepared an Administrative Segregation Review.  (ECF No. 42-7, Exh. G, Administrative Segregation Review.)  It notes that the original reason why Plaintiff was placed in administrative segregation was because the U.S. Marshals "sent paperwork [stating] that he is an escape risk" and that the "same risk remains."  Id.  On April 15, 2011, Plaintiff sent a request to Defendant Steele-Smith because of the "sleep deprivation" and "mental cruelty" he was experiencing in the RHU.  (ECF No. 42-8, Exh. H, Request Slip dated 4/15/11.)  He asked to be transferred to the Special Needs Unit "with the

caveat that he be locked down for 23 hours a day as was the practice of the county jail for other administrative custody inmates and several disciplinary segregation inmates." Id. His request was denied on the basis that he was housed in the RHU because he was an escape risk. Id. Plaintiff then wrote to the U.S. Marshals asking to be transferred. (ECF No. 17, Amended Complaint at ¶ 10.) On April 22, 2011, the U.S. Marshals removed Plaintiff from the care of the Beaver County Jail. (ECF No. 42-2, Exh. B, Affidavit of Warden Schouppe at ¶ 45.)

In his Amended Complaint, Plaintiff makes references to another inmate who had escaped from the Beaver County Jail. This inmate has been identified by Defendants as a work release inmate by the name of Joel Perez. (ECF No. 42-2, Exh. B, Affidavit of Warden Schouppe at ¶ 47.) Perez was part of the Community Work Program where inmates perform landscaping services outside the jail as a community service to nonprofits and for municipalities. Id. at ¶ 49. On one occasion, Perez "walked away" from the Community Work Program, was caught and charged with escape. Id. at ¶¶ 50-51. He did not attempt to escape from inside the jail itself. Id. at ¶ 52. He was also charged and convicted with a disciplinary violation for the escape. Id. at ¶ 53; *see also* (ECF No. 55-2, Exh. J, Inmate Disciplinary/Classification Hearing Disposition for Joel Perez). His work release status was revoked and he was sent to the RHU. Id. at ¶ 54. After serving his disciplinary violation, Perez was housed in general population but was not permitted to return to work release. Id. at ¶ 55.

## C. Discussion

Defendants move for summary judgment on Plaintiff's remaining counts, Counts Four through Six. Count Six will be addressed first.

### 1. Classification Claims (Count Six)

In Count Six of Plaintiff's Amended Complaint, he alleges that Defendants Monza and Steele-Smith violated his right to due process and equal protection by classifying him, an escape risk, on administrative segregation in the RHU while placing inmate Joel Perez, a convicted escapee, in general population.[2]

a. Due Process

Plaintiff contends that his classification to the RHU as an escape risk, while another inmate was simultaneously placed in general population after having escaped, was in violation of his substantive due process rights.[3] With respect to substantive due process claims brought by pretrial detainees, the Supreme Court established the principle that "a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law." Bell v. Wolfish, 441 U.S. 520, 535-36 (1979). In determining whether a restriction is punitive, the Bell Court formulated the "reasonable relationship" test. Id. at 539 ("[I]f a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to punishment."). In distinguishing what restrictions are punitive from those that are regulatory, courts can look to a number of factors, including:

> Whether the sanction involves an affirmative disability or restraint, whether it has historically been regarded as a punishment, whether it comes into play only on a finding of scienter, whether its operation will promote the traditional aims of punishment -- retribution and deterrence, whether the behavior to which it applies

---

[2] Although Defendants maintain that inmate Perez was charged with a disciplinary infraction in connection with his escape and subsequently housed in the RHU, Plaintiff contends that he was told otherwise by Perez. Specifically, Perez told Plaintiff that he was placed in the general population after his escape from the work release program and that he spent about seven or eight days in the RHU shortly thereafter but it was for matters unrelated to the escape. Defendants have produced Perez's Inmate Disciplinary record which states that Perez pled guilty to "walking away" from his work detail. As a result, he was placed in the RHU for thirty days, from February 28, 2011, through March 29, 2011. (ECF No. 55-2, Exh. J, Inmate Disciplinary/Classification Hearing Disposition.)

[3] While Defendants addressed this claim as if Plaintiff was asserting a procedural due process violation, Plaintiff responded that he was not raising a procedural due process claim and that "the issue" is not "his placement in the RHU." (ECF No. 49 at 4.) He goes on to rely on law with regard to substantive due process. Therefore, the Court will address this claim as such.

is already a crime, whether an alternative purpose to which it may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned . . . .

Bell, 441 U.S. at 537-38 (quoting Kennedy v. Mendoza-Martinez, 372 U.S. 144, 168-69 (1963).

However, "[a]bsent a showing of an expressed intent to punish on the part of detention facility

officials, that determination generally will turn on 'whether an alternative purpose to which [the

restriction] may rationally be connected is assignable for it, and whether it appears excessive in

relation to the alternative purpose assigned [to it].'" Id. at 538 (quoting Kennedy, 372 U.S. at

168-69.). Thus, "if a restriction or condition is not reasonably related to a legitimate goal – if it

is arbitrary or purposeless – a court permissibly may infer that the purpose of the governmental

action is punishment that may not constitutionally be inflicted upon detainees *qua* detainees." Id.

at 539.

Unconstitutional punishment typically includes both objective and subjective

components. The objective component requires an inquiry into whether "the deprivation [was]

sufficiently serious" and the subjective component asks whether "the officials act[ed] with a

sufficiently culpable state of mind[.]" Wilson v. Seiter, 501 U.S. 294, 298 (1991). Thus,

[A] particular measure amounts to punishment when there is a showing of express intent to punish on the part of detention facility officials, when the restriction or condition is not rationally related to a legitimate non-punitive government purpose, or when the restriction is excessive in light of that purpose.

Stevenson v. Carroll, 495 F.3d 62, 68 (3d Cir. 2007) (quoting Rapier v. Harris, 172 F.3d 999,

1005 (7th Cir. 1999). To evaluate a pretrial detainee's claim on unconstitutional punishment,

courts must examine the totality of circumstances within the institution. Hubbard v. Taylor, 399

F.3d 150, 160 (3d Cir. 2005).

In Stevenson v. Carroll, 495 F.3d 62, 69 (3d Cir. 2007), the Third Circuit stated,

> Although the substantive and procedural due process evaluations are distinct, a showing by the prison officials that a restrictive housing assignment is predicated on a legitimate managerial concern and is therefore not arbitrary or purposeless, will typically foreclose the substantive due process inquiry.

Stevenson, 495 F.3d at 69.   Here, Plaintiff arrived at the Beaver County Jail with a Prisoner Custody Alert Notice from the U.S. Marshals stating that Plaintiff was an "escape risk" based upon a "prior escape attempt" from a penal institution.   The Alert Notice also stated that Plaintiff's current charges included escape.   Based upon this, Defendant Monza classified Plaintiff as an escape risk and placed him in the RHU under administrative segregation.

Plaintiff does not dispute that he had a prior conviction for possessing escape paraphernalia and it does not even appear as though he challenges the reasoning for his classification.   Indeed, Plaintiff provides no argument as to how his substantive due process rights were violated.   His apparent dispute is that he was placed in the RHU while inmate Joel Perez was placed in the general population after he had escaped from jail officials on a work release assignment.   This does not state a substantive due process claim.   Nothing in the record suggests that Plaintiff's placement in the RHU was punitive.   Indeed, the evidence in the record makes clear that Plaintiff was classified to the RHU because he was an escape risk.   There is no question that "internal security of detention facilities is a legitimate governmental interest." Block v. Rutherford, 468 U.S. 576, 586 (1984) (citing Bell, 441 U.S. at 546).   The question before the Court, therefore, is narrow: whether Plaintiff's placement in the RHU on administrative segregation was reasonably related to the security of the jail.   There is nothing in the record from which a reasonable jury could find that it was not.

Moreover, the Third Circuit has instructed that deference is to be given to the correctional institution's reasoning for housing a pretrial detainee in a particular manner:

In considering the asserted rationale for placing pretrial detainees in restricted housing, courts should be mindful of our pronouncement in Shoats: "Shoats could conceivably be held in administrative custody merely because his prior crimes reasonably foreshadow future misconduct." Shoats, 213 F.3d at 146. This consideration is consistent with the Supreme Court's emphasis on the principle that "we are unwilling to substitute our judgment on these difficult and sensitive matters of institutional administration and security for that of 'the persons who are actually charged with and trained in the running' of such facilities." Block v. Rutherford, 468 U.S. 576, 588 (1984) (quoting Bell, 441 U.S. at 562).

Stevenson, 495 F.3d at 71. The Supreme Court has also instructed that courts must accord prison administrators "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." Bell, 441 U.S. at 547. Applying these standards, and for the reasons previously stated, Defendants should be granted summary judgment on this claim.

b. Equal Protection

Plaintiff contends that Defendants violated his right to equal protection by keeping him in the RHU on administrative custody while placing inmate Joel Perez, a convicted escapee, in general population. The Equal Protection Clause of the Fourteenth Amendment exists to protect similarly situated individuals from disparate treatment under the law or by some other state action. Artway v. Att'y Gen. of New Jersey, 81 F.3d 1235, 1267 (3d Cir. 1996). The Equal Protection Clause "is not a command that all persons be treated alike but, rather, 'a direction that all persons similarly situated should be treated alike.'" Id. (quoting City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 439 (1985)). "Treatment of dissimilarly situated persons in a dissimilar manner by the government does not violate the Equal Protection Clause." Klinger v. Dep't of Corrs., 31 F.3d 727, 731 (8th Cir. 1994).

An equal protection violation in a prison setting requires proof that an inmate "was treated differently than others similarly situated as a result of intentional or purposeful

discrimination . . . [The inmate] also must show that the disparity in treatment cannot survive the appropriate level of scrutiny, which, in a prison setting, means that he must demonstrate that his treatment was not reasonably related to [any] legitimate penological interests." Phillips v. Girdich, 408 F.3d 124, 129 (2d Cir. 2005) (internal citation and quotation marks omitted); *see also* Wilson v. Schillinger, 761 F.2d 921, 929 (3d Cir. 1985).

Defendants maintain, and the Court agrees, that inmate Joel Perez is not a valid comparator. Perez was part of the Community Work Program, which performs landscaping services outside the jail as a community service to nonprofits and for municipalities. On one occasion, Perez "walked away" from the Community Work Program. He was caught and charged with escape. He was also charged and convicted with a disciplinary violation for the escape, had his work release status revoked and was sent to the RHU. After serving his disciplinary violation, he was housed in general population but was not permitted to return to work release. Although Plaintiff disputes the specifics of Perez's escape, and contends that Perez was sent to the RHU for matters unrelated to the escape conviction, these disputes are immaterial and are not supported by the record. Unlike Perez, Plaintiff was a federal bank robbery suspect that was designated as an escape risk by the U.S. Marshals. There is nothing in the record to suggest that Perez had an escape history prior to the incident in question. Moreover, he did not attempt to escape from inside the jail itself. Plaintiff, on the other hand, has an admitted history of attempted escape from within a penal facility. There is simply nothing in the record to suggest that another inmate who was similarly situated to Plaintiff was treated any differently and he has provided nothing to support his contention that Perez was housed in the RHU for matters unrelated to his escape.

Furthermore, even if there existed a valid comparator, there is nothing in the record to suggest that Plaintiff was treated differently due to purposeful discrimination. Given that he was an escape risk, Plaintiff's placement in the RHU was clearly related to legitimate penological interests and he was advised on several occasions that the jail would be willing to move him out of the RHU if he would clear up the escape risk designation with the U.S. Marshals. Plaintiff remained in the jail for only two months before he was transferred. There does not exist a genuine issue of material fact as to whether an equal protection violation occurred. As such, Defendants should be granted summary judgment on this claim.

## 2. Disparate Treatment Between Male and Female RHU Inmates (Counts Four and Five)

In Counts Four and Five of the Amended Complaint, Plaintiff alleges that Defendants Monza and Steele-Smith violated his right to equal protection by denying male RHU inmates the same privileges received by female RHU inmates, such as hot meals, full commissary privileges, television access, leisure library cart access, and access to other reading materials from outside vendors. He further alleges that denying male RHU inmates the benefit of non-religious reading materials is a violation of his First Amendment rights to freedom of speech and press.

### a. Legal Standing

As an initial matter, Counts Four and Five attempt to assert alleged violations of rights of "similarly situated inmates" – inmates who have been or currently are housed in the RHU. (ECF No. 17 at 6.) Plaintiff, however, does not have standing to assert claims alleging violations of the rights of other inmates. *See* Addiction Specialists, Inc. v. Township of Hampton, 411 F.3d 399, 405 (3d Cir. 2005) (quoting Warth v. Seldin, 422 U.S. 490, 499 (1975)) ("[A] 'plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the

legal rights or interests of third parties.'"). Plaintiff concedes on this point. As such, summary judgment should be granted to Defendants to the extent Plaintiff attempts to allege violations of the rights of any inmate other than himself.

      b. <u>Equal Protection</u>

Plaintiff argues that female RHU inmates received benefits and better treatment than he received as a male RHU inmate. With the exception of providing female RHU inmates hot meals, Defendants maintain that all RHU inmates, male and female, are treated similarly. According to Defendant Schouppe, both male and female RHU inmates receive the same commissary privileges; they are both permitted to have legal materials and to receive legal mail; they are both permitted to receive personal correspondence, but not magazines, books or periodicals; they are both permitted to have a religious text upon request; and neither are permitted access to the leisure library cart.

In support of his Partial Motion for Summary Judgment and his opposition to Defendants' Motion for Summary Judgment, Plaintiff relies on a conversation he overheard between two correctional officers in which one correctional officer stated that the male RHU inmates did not receive the same benefits as the female RHU inmates. The correctional officer allegedly stated that these benefits included hot meals, the opportunity to watch television, full commissary privileges, and access to books on the leisure library reading cart. (Plaintiff's Sworn Affidavit, ECF No. 38-2 at 3-4.) Plaintiff states that after he overheard this conversation, he spoke to an inmate commissary worker who confirmed the information with regard to full commissary benefits for female RHU inmates. <u>Id</u>.

In general, hearsay evidence is not admissible and may not be considered at summary judgment. In this circuit, however, hearsay evidence produced in an affidavit opposing summary

judgment may be considered if the out-of-court declarant could later present the evidence in a form that would be admissible at trial. *See* <u>Shelton v. Univ. of Med. & Dentistry</u>, 223 F.3d 220, 223 n.2 (3d Cir. 2000); <u>J.F. Feeser, Inc. v. Serv-A-Portion, Inc.</u>, 909 F.2d 1524, 1542 (3d Cir. 1990). Plaintiff maintains that the correctional officer's statement regarding the disparate treatment of male and female RHU inmates is a non-hearsay admission by a party opponent made by the party's agent or employee under Federal Rule of Evidence 801(d)(2)(D). For Rule 801(d)(2)(D) to apply, the statement must concern matters within the scope of the declarant's agency or employment. <u>United States v. Riley</u>, 621 F.3d 312, 338 (3d Cir. 2010). While Plaintiff could argue that the statement made by the correctional officer could fall under this exclusion to the hearsay rule, it is fatal to Plaintiff's argument that he cannot affirmatively identify either of the two correctional officers. Without knowing the identity of the alleged employees, Plaintiff cannot establish that the statement was made within the scope of their employment. *See* <u>Hughey v. The Home Depot USA, Inc.</u>, No. 08-03213, 2009 U.S. Dist. LEXIS 63737, at *3 (E.D. Pa. July 23, 2009); <u>Carden v. Westinghouse Electric Corp.</u>, 850 F.2d 996, 1002 (3d Cir. 1988) (finding double hearsay declaration inadmissible as an admission of a party opponent because the original declarant was unknown. "[B]ecause [the declarants] are unidentified, the record could not, and does not, establish that [the statement] was within the scope of their employment."); <u>U.S. v. Cruz</u>, 910 F.2d 1072, 1081 n.10 (3d Cir. 1990) (without knowing the identity of a declarant, "the indicia of reliability embodied in the Fed. R. Evid. Rule 801(d)(2)(D) non-hearsay definition were absent, and the statement had to be excluded"); <u>Zaken v. Boerer</u>, 964 F.2d 1319, 1324 (3d Cir. 1992) ("[W]ithout identification of the declarant, the statement . . . did not have a sufficient evidentiary foundation to establish the existence of an agency relationship as required under Rule 801(d)(2)(D)"). Thus, because the correctional

officer's statement does not qualify as an admission by a party opponent, or another exclusion or exception to the hearsay rule, it is inadmissible as an unreliable out-of-court statement. The same holds true with regard to the statement made by the unidentified inmate commissary worker.

Plaintiff also relies on the sworn affidavit of Monica Burgess, a private investigator whom he hired to investigate matters pertaining to this action. Burgess states that during her investigation, she spoke to a woman by the name of Danielle Shimrak, an inmate in the Beaver County Jail from April 2007 to August 2007, who conveyed that she received hot meals, watched television, was allowed access to books and that she saw other women receiving these same privileges. (ECF No. 67-1 at 2.) However, there is nothing in the record to suggest that Shimrak was housed in the female RHU or that the women whom she claimed to have seen receiving the same benefits were housed in the female RHU. Moreover, according to Burgess, Shimrak stated that she was an inmate at the Beaver County Jail in 2007, roughly four years before Plaintiff. Thus, her admissions are nonetheless immaterial because the relevant time period at issue is not implicated. Burgess' affidavit fails to establish the existence of a triable issue of fact with regard to this claim.

To support his allegation pertaining to the difference in treatment between the male and female RHU inmates, Plaintiff lastly relies on the Beaver County Jail's commissary policy. Notably, he asserts that the policy supports his position because there is only one physically separate unit at the jail called the Restricted Housing Unit and that unit houses only male inmates. On the other hand, all female inmates are housed in the same area of the jail and female RHU cells are contained within the female general population cells. Thus, Plaintiff contends that the policy's reference to RHU commissary restrictions pertains only to male RHU inmates. The

16

undersigned agrees with Defendants that this is a tortured reading of the jail's policy and does not support Plaintiff's arguments as to the purported differences in treatment of male and female RHU inmates with regard to commissary restrictions or otherwise. Consequently, Defendants should be granted summary judgment on Plaintiff's equal protection claims regarding these unfounded disparities in treatment between male and female RHU inmates.

Defendants readily admit that female RHU inmates receive hot meals and that the male RHU inmates do not. However, they argue that this difference in treatment is reasonably related to legitimate penological interests, and therefore justified under Turner v. Safley, 482 U.S. 78 (1987).[4] *See* Williams v. Morton, 343 F.3d 212, 221 (3d Cir. 2003) (the test articulated in Turner applies to alleged violations of equal protection). Specifically, they assert that the policy of feeding the inmates bag meals in the male RHU is based upon safety and security concerns as well as the orderly operation of the units. According to Defendant Warden Schouppe, inmates in the male RHU were previously provided with hot meals but they created disturbances and other problems by using the trays and utensils that accompany the hot meals as weapons and to fling feces. For the safety of the guards and other inmates, and for security purposes, inmates in the male RHU unit were switched to bag meals which typically consist of two sandwiches, milk or juice, and a dessert. Defendant Schouppe states that because the jail has not experienced the same problems with female RHU inmates, there was no reason to make a change to their meals.

In this case, the jail's meal policy regarding the difference in treatment between male and female RHU inmates passes Turner scrutiny. Because the policy of feeding male RHU inmates

---

[4] Pursuant to Turner v. Safley, 482 U.S. 78, 89 (1987), courts examine four factors to determine the reasonableness of a prison regulation: (1) whether a valid, rational connection exists between the regulation and a legitimate government interest behind the rule; (2) whether there are alternative means of exercising the right in question that remain available to prisoners; (3) whether accommodation of the asserted constitutional right will have negative effects on guards, other inmates or prison resources; and (4) whether there are obvious, easy alternatives available at a *de minimis* cost. Turner, 482 U.S. at 89-91.

bag meals is based on safety and security concerns, the policy is rationally related to a legitimate governmental interest. Further, while it is established that prisoners have a right to adequate nutrition, they do not have a constitutional right to hot meals. *See* Laufgas v. Speziale, 263 F. App'x 192, 198 (3d Cir. 2008) (citing Ramos v. Lamm, 639 F.2d 559, 571 (10th Cir. 1980); Brown-El v. Delo, 969 F.2d 644, 648 (8th Cir. 1992) (finding frivolous prisoner's claim that his constitutional rights were violated when he was served cold food). The bag meal in which the male RHU inmates are served satisfies this constitutional mandate. Finally, it would be logistically difficult, and could create disruption in the unit, to supply some inmates with hot meals while others on the same unit receive bag meals. Because this disparity in treatment between the female and male RHU inmates is related to legitimate penological interests, Defendants should be granted summary judgment.

c. First Amendment

Plaintiff claims that it was a violation of his First Amendment rights to freedom of speech and press to disallow male RHU inmates the benefit of reading materials, "from any source." As an initial matter, Plaintiff was not prohibited from having reading materials from all sources. Plaintiff admits that he was allowed to have one book of a religious nature and that he requested and received a Holy Bible, a Scripture-Text Datebook, a religious magazine and a devotional booklet. Additionally, RHU inmates are permitted to have legal materials, to receive legal mail, and to receive personal correspondence, with the exception of magazines, books or periodicals. The crux of Plaintiff's claim is that he was denied leisure reading materials even though he was housed in the RHU for non-disciplinary reasons, and his argument in favor of partial summary judgment consists primarily of arguing that there would, in his opinion, have been a way to accommodate him with leisure reading materials by providing books when he came out of his

cell for recreation.  Once again, <u>Turner</u> contains the basic substantive legal standards governing this issue.

In <u>Beard v. Banks</u>, 548 U.S. 521 (2006), the United States Supreme Court reviewed limitations which existed for inmates in the long term segregation unit ("LTSU"), a high security, restricted housing unit of the Pennsylvania state prison system.  The Court upheld a prison regulation under which the LTSU inmates have no access to newspapers, magazines, or personal photographs but were permitted legal and personal correspondence, religious and legal materials, two library books, and writing paper.  <u>Id</u>. at 526.  The Court noted that "imprisonment does not automatically deprive a prisoner" of First Amendment protections, but in a correctional institution "the Constitution sometimes permits greater restriction of such rights in a prison than it would allow elsewhere."  <u>Id</u>.  It concluded that the policy in question passed <u>Turner</u> scrutiny.

Similar to the <u>Beard</u> case, the Beaver County Jail's policy restricting access to leisure reading materials is also based on a legitimate penological concern.  The RHU houses inmates who have committed disciplinary violations while in the jail and the limitation of privileges in the RHU, including access to leisure reading materials, is intended to modify their behavior such that they will follow jail rules and regulations in the future.  Although Plaintiff was housed in the RHU, not for committing disciplinary infractions, but on administrative segregation status generated by his escape risk designation, the undersigned fails to see how this reasoning would not apply equally to him.  With respect to the second <u>Turner</u> factor, the <u>Beard</u> Court stated "[t]he absence of any alternative thus provides 'some evidence that the regulations [a]re unreasonable,' but is not 'conclusive' of the reasonableness of the Policy."  <u>Beard</u>, 548 U.S. at 532 (citing <u>Overton v. Bazzetta</u>, 539 U.S. 126, 135 (2003)).  In <u>Beard</u>, the LTSU inmates had no "alternative means of exercising the right," but after 90 days they were able to graduate to level 1 and regain

access to most of their lost rights. Id. Plaintiff, on the other hand, was advised that he would be moved to a less restrictive unit if he could clear the escape risk designation with the U.S. Marshals. Indeed, Plaintiff maintains that he was transferred from the Beaver County Jail after he wrote to the U.S. Marshals expressing his dissatisfaction with the way he was being treated. As such, there was no absence of available alternatives. With respect to the third and fourth Turner factors in the Beard case, it was the prison authorities' view that if the policy helped to produce better behavior, then its absence would likely produce worse behavior. Id. Such is the case here as it is reasonable to believe that if RHU inmates were to be given an ulterior means of obtaining leisure reading material, the resulting impact would be negative because it would affect the goal of modifying bad behavior and result in the expenditure of more prison resources. Furthermore, even though Plaintiff provides a clever example of how he could have been accommodated with leisure reading materials during his one hour recreation period, there is no evidence that his proposed plan would have a *de minimis* impact on the jail, as required under Turner. Defendants have demonstrated that the policy restricting leisure reading materials to RHU inmates is reasonable and related to legitimate penological interests. Consequently, summary judgment should be granted in their favor.

## III.   CONCLUSION

For the reasons set forth above, it is respectfully recommended that Plaintiff's Motion for Partial Summary Judgment (ECF No. 38) be denied and Defendants' Motion for Summary Judgment (ECF No. 40) be granted.

In accordance with the applicable provisions of the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B)&(C), and Rule 72.D.2 of the Local Rules of Court, the parties shall have fourteen (14) days from the date of the service of this report and recommendation to file written

objections thereto. Any party opposing such objections shall have fourteen (14) days from the date on which the objections are served to file its response. A party's failure to file timely objections will constitute a waiver of that party's appellate rights.

Dated: February 8, 2013

_____
Lisa Pupo Lenihan
Chief United States Magistrate Judge

cc:  David L. Mathis
      05233-068
      FCI Herlong
      P.O. Box 800
      Herlong, CA 96113
      *Via U.S. Postal Mail*

      Counsel of Record
      *Via ECF Electronic Mail*